UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES GENCARELLI,

                         Plaintiff,

v.                                                          1:25-CV-0215
                                                            (GTS/DJS)
AP&G CO., INC., *doing business as* Catchmaster;
WOODSTREAM CORPORATION *doing business
as* Victor; and BELL LABORATORIES, INC.,

                         Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

JAMES GENCARELLI
  Plaintiff, *Pro Se*
510 Broadway
Saratoga Springs, NY 12866

TARTER KRINSKY & DROGIN LLP                     MICHAEL J. GRUDBERG, ESQ.
  Counsel for Defendant AP&G
1350 Broadway
New York, NY 10018

BARCLAY DAMON LLP                               MICHAEL J. MURPHY, ESQ.
  Counsel for Defendant Woodstream             KARA L. BAKER, ESQ.
80 State Street
Albany, NY 12207

VOUTE, LOHRFINK, McANDREW &                     EVAN J. LYMAN, ESQ.
MEISNER LLP
  Counsel for Defendant Bell
170 Hamilton Avenue, Suite 315
White Plains, NY 10601

GLENN T. SUDDABY, United States District Judge

**DECISION and ORDER**

Currently before the Court, in this product liability action filed by James Gencarelli ("Plaintiff") against AP&G Co., Inc. ("AP&G"), Woodstream Corporation ("Woodstream"), and Bell Laboratories, Inc. ("Bell") (collectively "Defendants"), are the following seven motions: (1) Plaintiff's letter-motion requesting that the Court accept his late filing of a verified statement; (2) Plaintiff's letter-motion seeking to consolidate each of the three actions against Defendants pursuant to Fed. R. Civ. P. 42(a);[1] (3) Plaintiff's motion for leave to file a Third Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2); (4) Plaintiff's motion for preliminary injunction pursuant to Fed. R. Civ. P. 65; (5) Defendant Woodstream's motion to dismiss Plaintiff's Second Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); (6) Defendant Bell's motion to dismiss Plaintiff's Second Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); and (7) Defendant AP&G's motion to dismiss the Second Amended Complaint for lack of subject-matter jurisdiction pursuant to Fed. Civ. P. 12(b)(1) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. Nos. 17, 26, 36, 40, 41, 43, 44.) For the reasons set forth below, Defendant AP&G's motion to dismiss for lack of subject-matter jurisdiction is granted based on Plaintiff's failure to establish the existence of complete diversity among the parties; Plaintiff's motion to amend and motion for a preliminary injunction are denied as futile; Plaintiff's Second Amended Complaint is dismissed without prejudice for lack of subject-matter jurisdiction; and all the other pending motions are therefore denied as moot.

---

[1]     The Court notes that this motion appears to have been filed as a result of the *pro se* Plaintiff's misunderstanding about the consolidation mechanism. Plaintiff filed a single action against all three Defendants and therefore there are no three actions to consolidate. As a result, Plaintiff's letter-motion to consolidate is denied.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Second Amended Complaint

Plaintiff filed the original Complaint in this action on February 14, 2025.  (Dkt. No. 1.)

He subsequently filed an Amended Complaint as a matter of course on February 19, 2025.  (Dkt.

No. 5.)  On February 26, 2025, he filed a request for leave to file a Second Amended Complaint,

which this Court granted on March 3, 2025, and the Second Amended Complaint was filed also

on that date.  (Dkt. Nos. 7, 8, 10.)  Although Plaintiff has a pending motion for leave to file a

Third Amended Complaint,[2] such leave has not been granted by this Court (as explained below

in Part III of this Decision and Order), and so the Second Amended Complaint is the operative

pleading in this action.  (Dkt. No. 36.)

Generally, in his Second Amended Complaint, Plaintiff asserts six claims all based on the

Defendants' alleged manufacture and marketing of glue traps designed to be used for pest

control, as well as on physical injuries he allegedly suffered while attempting to free animals

ensnared in those traps: (1) a claim of negligence against all Defendants; (2) a claim of public

nuisance against all Defendants; (3) a claim of deceptive practices pursuant to New York Gen.

---

[2]      Plaintiff also appears to have attempted to file a motion for leave to file a *Fourth* Amended Complaint after briefing on all the relevant pending motions had been completed (despite the fact that the Court has not yet ruled on his already pending motion to file a Third Amended Complaint).  (Dkt. No. 58.)  However, even if the Court were inclined to consider this motion (which it is not), permitting the amendments contained within the proposed Fourth Amended Complaint would not cure the defects identified below in this Decision and Order, namely the failure to establish the existence of either federal-question or diversity jurisdiction. Notably, although Plaintiff now alleges in that proposed Fourth Amended Complaint that Defendant AP&G is "a North Carolina corporation," this baseless allegation is still contradicted by the information provided by Defendant AP&G showing that it is in fact incorporated in New York, which destroys complete diversity in this case.

Bus. L. § 349 against all Defendants; (4) a claim of breach of the implied warranty of

merchantability against all Defendants; (5) a claim of breach of express warranty against all

Defendants; and (6) a claim of strict product liability against all Defendants. (Dkt. No. 10.)

### B.    Parties' Briefing on Defendants' Motions to Dismiss[3]

#### 1.    Defendant Woodstream's Memorandum of Law

Generally, in its motion to dismiss, Defendant Woodstream makes two arguments. (Dkt.

No. 41, Attach. 1.) First, Defendant Woodstream argues that Plaintiff lacks standing to bring any

claims on behalf of animals. (*Id.* at 9-11.) Specifically, Plaintiff has not alleged standing as to

any injury he himself incurred, because he has not alleged that he purchased any glue trap, nor

has he alleged any specifics about the injuries caused by the traps or which specific Defendant

manufactured the trap(s) by which he was purportedly injured, and his assertion that animals

were injured by the traps is insufficient to allege a *personal* injury. (*Id.*)

Second, Defendant Woodstream argues that the Second Amended Complaint does not

state any claim upon which relief can be granted. (*Id.* at 11-25.) More specifically, Defendant

Woodstream argues as follows related to the specific claims: (a) Plaintiff has not stated a

negligence claim, because he has not alleged any viable duty owed to him, has not identified

which traps he was injured by or whether he ever purchased or used such trap, and has not

---

[3]    The Court will not summarize the arguments set forth in Plaintiff's letter-motion to consolidate, motion to amend his Second Amended Complaint, or motion for preliminary injunction because, as stated earlier, the Court has concluded that it lacks subject-matter jurisdiction over this action. It has summarized the arguments set forth in the motions filed by Defendant Woodstream and Defendant Bell only because (1) the reply memoranda on those motions contain arguments regarding jurisdiction, and (2) the Court relies on certain of the arguments initially set forth by Defendant Woodstream and Defendant Bell as an alternative ground for dismissal.

alleged how a warning would have prevented the injury here; (b) Plaintiff has not stated a claim for public nuisance, because he has not alleged any specialized injury he suffered related to the glue traps and has not alleged any non-conclusory endangerment or injury to the property, health, safety, or comfort of a considerable number of people related to the glue traps; (c) Plaintiff has not stated a claim for deceptive practices pursuant to New York Gen. Bus. L. § 349, because he fails to allege that Defendant Woodstream made any misrepresentative statement or took any misrepresentative action, that he ever purchased any relevant glue trap product, or that he suffered a qualifying injury as a result of some misleading practice; (d) Plaintiff has not stated a claim for breach of the implied warranty of merchantability, because he has not alleged that he purchased a relevant glue trap and he has not alleged that the glue traps were defective or unfit for their ordinary purpose; (e) Plaintiff has not stated a claim for breach of express warranty, because he has not alleged that he purchased a relevant glue trap or that he relied upon any written or oral affirmation of fact made by Defendant Woodstream, and he has not alleged how the products' functioning deviated from any warranty; and (f) Plaintiff has not stated a claim for strict liability, because he has not alleged any defect related to how the product operated, nor has he alleged what specific product even caused the alleged injury, that the product could be designed in a safer manner, or that any risk of harm to people and non-pest animals was not so obvious that it would require a warning (much less that any warnings given were somehow insufficient when considering the level of risk presented).  (*Id.*)

### 2.    Defendant Bell's Memorandum of Law

Generally, in its motion to dismiss, Defendant Bell makes seven arguments.  (Dkt. No. 43, Attach. 2.)  First, Defendant Bell argues that Plaintiff's Second Amended Complaint should

be dismissed as a result of its use of impermissible group pleading in violation of Fed. R. Civ. P. 8, because he has failed to articulate with any clarity which Defendant manufactured, marketed, or sold the specific glue trap that caused his alleged injuries. (*Id.* at 9-10.)

Second, Defendant Bell argues that Plaintiff has failed to state a claim for any product liability cause of action. (*Id.* at 11-19.) More specifically, Defendant Bell argues the following: (a) Plaintiff has not stated a claim related to a manufacturing defect, because he has not alleged that the specific product that injured him was defective or that its manufacture deviated from the usual process (and in fact has not even alleged what that product was other than a glue trap), and any injury he sustained from attempting to voluntarily free an animal from a trap is too remote to constitute proximate cause; (b) Plaintiff has not stated a claim related to a design defect, because he has not alleged the existence of a safer feasible design, has not identified what feature poses an unacceptably high risk of harm, and has not alleged any specific design defect much less that such defect proximately caused his injuries; (c) Plaintiff has not stated a claim related to failure to warn, because he has not alleged how any warnings (or lack thereof) were insufficient to encompass the alleged danger or that such lack of warning proximately caused his injuries; and (d) Plaintiff has not stated any claim for a breach of warranty, because he has not alleged any express representation that induced him to purchase a relevant product and has not alleged that the products were not fit for the ordinary purpose for which they are used (i.e. trapping rodents and other pests).

Third, Defendant Bell argues that Plaintiff lacks standing to bring a public nuisance claim, because he is a private litigant and has failed to allege that he has suffered any special injury beyond that suffered by the community at large. (*Id.* at 19-20.)

Fourth, Defendant Bell argues that Plaintiff has not stated a claim pursuant to New York

Gen. Bus. L. §§ 349 or 350, because he has not identified any misleading or deceptive statement

or action by Defendants, has not alleged that he relied on any such statements or acts, and has not

even alleged that he ever purchased a glue trap. (*Id.* at 20-22.)

Fifth, Defendant Bell argues that Plaintiff lacks standing to seek injunctive relief, because

he has not alleged a risk of any real or immediate future injury and, to the extent he seeks a

nationwide injunction, he has not brought this action as a class action. (*Id.* at 22-23.)

Sixth, Defendant Bell argues that Plaintiff's Second Amended Complaint should be

dismissed based on the statute of limitations because he has not alleged the date on which any

alleged injuries occurred and therefore it is not clear whether his claims are timely. (*Id.* at 24.)

Seventh, Defendant Bell argues that Plaintiff should not be granted further leave to

amend his Second Amended Complaint, because he has failed to correct the pleading

deficiencies in his original Complaint through any of his successive amendments and instead has

merely added more Defendants, and he has a history of engaging in vexatious and unmeritorious

litigation. (*Id.* at 24-27.) Defendant Bell additionally requests that this Court issue a pre-filing

injunction against Plaintiff to prevent him "from filing further pleadings, motions, or amended

complaints in this action, and from initiating any future lawsuits in this or any other federal court

without first obtaining leave of court." (*Id.* at 26-27.)

### 3.    Defendant AP&G's Memorandum of Law

Generally, in its motion to dismiss, Defendant AP&G makes four arguments. (Dkt. No.

44, Attach. 1.) First, Defendant AP&G argues that the Second Amended Complaint must be

dismissed, because it does not establish diversity jurisdiction given that Defendant AP&G is a

New York corporation and, as a result, complete diversity does not exist in this case.  (*Id.* at 10-11.)

Second, Defendant AP&G argues that Plaintiff has failed to state a claim upon which relief can be granted as to any of his asserted causes of action.  (*Id.* at 11-21.)  More specifically, Defendant AP&G argues the following as to each of those causes of action: (a) Plaintiff has not stated a claim for negligence, because he has not alleged which specific product from which Defendant actually caused his alleged injuries, and has not alleged how any Defendant failed to exercise reasonable care, that any product was defective, or that the warnings provided about potential dangers of the glue traps were actually insufficient; (b) Plaintiff has not stated a claim of public nuisance, because he has not substantiated any generic assertions that glue traps pose an unreasonable risk to public health and safety, he has not alleged any negligent conduct by Defendants, and he has not alleged any injury he has suffered beyond the injury allegedly inflicted upon the public at large; (c) Plaintiff has not alleged a concrete and particularized physical injury, because his allegations on that point are vague and do not indicate when he was injured, what product injured him, or the damages resulting from such injury; (d) Plaintiff has not stated a claim pursuant to New York Gen. Bus. L. § 349, because he has not alleged that he purchased any relevant product (much less which specific one he purchased) or that he was induced to make that purchase by (or even was exposed to) a misrepresentation by Defendant AP&G; (e) Plaintiff has not stated a claim for breach of the implied warranty of merchantability, because he has not provided Defendant AP&G with pre-suit notice of any alleged breach and he has not alleged that the relevant glue traps are not fit for their intended purpose; (f) Plaintiff has not stated a claim for breach of express warranty, because he has again not provided any pre-suit

notice; and (g) Plaintiff has not stated a claim for strict liability because he has not alleged that the product was defective and has not plausibly alleged that the warnings provided regarding the use and potential dangers of the glue traps were insufficient as a legal matter.  (*Id.*)

Third, Defendant AP&G argues that Plaintiff lacks standing to assert any of his claims, because his generalized allegation that he was injured attempting to free an animal from a glue trap is not supported by any particularized facts and he cannot assert standing based on a generic interest in animal welfare.  (*Id.* at 21-23.)

Fourth, Defendant AP&G argues that permitting further amendment in this case would be futile, because the proposed amendments do not correct the many deficiencies in Plaintiff's Second Amended Complaint.  (*Id.* at 23.)

### 4.    Plaintiff's Combined Opposition Memorandum of Law

Generally, in his combined opposition to all three Defendants' motions, Plaintiff makes eleven arguments.  (Dkt. No. 48.)  First, Plaintiff argues that he has standing to pursue all of his claims, because "[t]he critical question is whether the matter affects the public interest in New York, not whether the individual plaintiff relied on a deceptive practice," and here he "[s]eeks equitable relief not for private gain, but to serve the public interest and eliminate animal suffering."  (*Id.* at 5.)  He also argues that he suffered a concrete and particularized injury in the form of "a puncture wound sustained while rescuing a trapped black cat from a Catchmaster glue trap."  (*Id.* at 9-10.)

Second, Plaintiff argues that his claim pursuant to New York Gen. Bus. L. § 349 is not insufficient, because that statute does not require that he have purchased the glue trap, but rather that Defendants engaged in deceptive consumer-oriented conduct that caused injury, which is the

case here given that Plaintiff has alleged that Defendants marketed the glue traps as "Home and Family Safe" and his injury as a result of the use of the trap by another person was reasonably foreseeable.  (*Id.* at 5-6.)

Third, Plaintiff argues that, as to his public nuisance claim, he has alleged a special injury: he sustained a physical puncture wound while rescuing a trapped cat from a glue trap. (*Id.* at 6-7.)

Fourth, Plaintiff argues that he has alleged facts to establish federal question jurisdiction in this matter, because "Defendants' glue traps may violate the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136-136y, which prohibits the distribution of misbranded or deceptively labeled pesticidal products," as well as "implicates the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a)(1), which prohibits unfair or deceptive acts or practices in commerce."  (*Id.* at 8-9.)

Fifth, Plaintiff argues that he has established standing for a permanent injunction, because he has alleged facts to plausibly suggest that he will be likely to encounter Defendants' products again in the course of preventing harm to wildlife or pets as long as glue traps continue to be sold.  (*Id.* at 9-10, 12.)

Sixth, Plaintiff argues that he has plausibly stated his relevant claims for the following reasons: (a) as to his negligence claim, Defendants owed a duty to avoid distributing dangerous products; (b) as to his public nuisance claim, he has alleged an unreasonable interference with public health and safety; (c) as to his Section 349 claim, Defendants failed to warn consumers of foreseeable health and animal welfare dangers and misrepresented the traps as safe and humane; (d) as to his breach of warranty claim, the packaging for the Catchmaster trap misrepresented

that it was safe and non-toxic; and (e) as to his strict liability claim, the design of the trap is "inherently dangerous, indiscriminate, and lacks warnings." (*Id.* at 10.)

Seventh, as to his strict liability claim, Plaintiff argues that he was not required to have purchased the trap himself and it does not matter than he was rescuing an animal rather than using the trap to catch animals when his injury occurred, because his injuries were a reasonably foreseeable consequence of the use of the traps based on the unreasonably dangerous design and the lack of adequate warnings. (*Id.* at 10-11.)

Eighth, as to his negligence claim, Plaintiff argues that it was foreseeable that an individual would try to free an animal stuck in one of Defendants' glue traps and that the individual might be injured as a result. (*Id.* at 11.)

Ninth, Plaintiff argues that the Court should not impose any restrictions on his ability to pursue this or any other litigation without notice and making findings of judicial abuse, and should consider this case on its merits rather than based on his litigation history. (*Id.* at 12.)

Tenth, Plaintiff argues that his claims should be permitted to proceed to a jury trial or, should the Court find his Second Amended Complaint to be deficient, he should be granted leave to amend. (*Id.* at 13.)

Eleventh, Plaintiff argues that diversity jurisdiction exists because Defendant AP&G has not provided sufficient information from which the Court can verify that its principal place of business is in New York. (Dkt. No. 48, Attach. 1, at 2.) He further argues that he should be permitted to engage in limited jurisdictional discovery to ascertain the truth of Defendant AP&G's citizenship. (*Id.* at 3.) He additionally argues that Defendant AP&G's failure to assert

a lack of personal jurisdiction in its initial motion to dismiss or otherwise contest personal jurisdiction has waived its right to raise such a challenge now. (*Id.* at 5-6.)

### 5. Defendant Woodstream's Reply Memorandum of Law

Generally, in its reply memorandum of law, Defendant Woodstream makes three arguments. (Dkt. No. 54.) First, Defendant Woodstream argues that Plaintiff cannot rely upon new theories to oppose the motions to dismiss, including asserting federal question jurisdiction based on claims pursuant to federal statutes that he has not asserted in the Second Amended Complaint. (*Id.* at 6.)

Second, Defendant Woodstream argues that Plaintiff has failed to allege facts to plausibly state any of his claims. (*Id.* at 6-11.) As to Plaintiff's negligence claim, he has not only confirmed that the trap in question was manufactured by a Defendant other than Defendant Woodstream, but his reliance on the "rescue doctrine" is misplaced because he was not trying to rescue another person, but rather an animal, and he has not alleged facts to plausibly suggest the existence of a duty owed to him by Defendant Woodstream specifically. (*Id.* at 6-7.) As to Plaintiff's public nuisance claim, his physical injury does not suffice to allege a "special injury" because it is the kind of harm that could theoretically be experienced by anyone else in the general public and was the result of a voluntary act. (*Id.* at 7-8.) As to Plaintiff's Section 349 claim, Plaintiff has admitted that the trap that allegedly injured him was manufactured by Defendant AP&G, and has not alleged that he actually saw the supposedly false representation before he suffered the relevant harm. (*Id.* at 8-10.) As to his claim of breach of implied warranty, he has not alleged that it was Defendant Woodstream's product that injured him or that the trap in question was unfit for its intended purpose and ordinary use. (*Id.* at 10.) As to his

claim of breach of express warranty, he has not alleged that any warranties were made related to the relevant trap specifically by Defendant Woodstream.  (*Id.* at 10-11.)  As to his strict liability claim, again, Plaintiff has not alleged any basis for recovery against Defendant Woodstream for the manufacture or marketing of the Catchmaster trap.  (*Id*. at 11.)

Third, Defendant Woodstream argues that Plaintiff's argument that federal question jurisdiction provides a basis for this action must be rejected, because Plaintiff does not assert any claims pursuant to FIFRA or the FTC Act in the Second Amended Complaint and he instead relies solely on state law, and, in any event, neither of those federal statutes provide a private right of action which would permit Plaintiff to use them as a basis for federal jurisdiction.  (*Id.* at 12-13.)  Defendant Woodstream additionally argues that the Court also does not possess diversity jurisdiction here, because Defendant AP&G is a New York corporation.  (*Id.* at 13.)

### 6.    Defendant Bell's Reply Memorandum of Law

Generally, in its reply memorandum of law, Defendant Bell makes five arguments.  (Dkt. No. 55.)  First, Defendant Bell argues that Plaintiff has not plausibly stated any product liability claims for the following reasons: (a) he has failed to address arguments regarding his manufacturing defect claim and has failed to allege any facts plausibly suggesting a manufacturing defect; (b) he has failed to allege any specific design feature that was defective and caused his injury and has failed to allege the existence of any safer, feasible design; (c) he has not alleged that Defendant Bell provided any warnings or how such warnings were inadequate and indeed only makes specific allegations about the Catchmaster trap, which Defendant Bell did not manufacture or market; (d) he has not attempted to rebut the arguments about the breach of warranty or merchantability claims and did not provide the required pre-suit

notice for either of those claims or any allegations regarding representations made by Defendant Bell, much less that the traps were unfit for their ordinary purpose; and (e) his reliance on the "rescue doctrine" is misplaced because it does not extend to the rescue of property, including domestic animals. (*Id.* at 5-10.)

Second, Defendant Bell argues that Plaintiff has failed to meet any of the requirements to show entitlement to a preliminary injunction, including because he has not alleged facts to establish that he has standing to seek such relief given that any assertion of likely future injury is purely hypothetical and based on Plaintiff's engagement in voluntary conduct. (*Id.* at 10-12.)

Third, Defendant Bell argues that Plaintiff has failed to state a claim pursuant to Section 349 because (a) he purchased the Catchmaster trap only after his injury, and (b) he has not identified any statement by Defendant Bell that was misleading related to that product, and the language identified is nevertheless puffery that is not actionable and not likely to mislead a reasonable consumer. (*Id.* at 12-13.)

Fourth, Defendant Bell repeats its argument that Plaintiff's Second Amended Complaint should be dismissed because there are no allegations from which the Court can determine that the claims here were timely filed. (*Id.* at 13.)

Fifth, Defendant Bell argues that Plaintiff's arguments regarding subject-matter jurisdiction based on unasserted federal claims cannot cure the lack of jurisdiction at the time this action was initiated, and the federal statutes upon which he relies for purported federal-question jurisdiction do not confer a private right of action. (*Id.* at 13-14.)

       **7.**     **Defendant AP&G's Reply Memorandum of Law**

Generally, in its reply memorandum of law, Defendant AP&G makes eight arguments. (Dkt. No. 56.)  First, Defendant AP&G argues that Plaintiff lacks standing to assert any of the claims in the Second Amended Complaint, because (a) his assertions that he will continue to attempt to free animals from glue traps are insufficient to establish a non-speculative likelihood of future harm, and (b) his assertion that his claims are made in the public interest is insufficient to allege a concrete injury (*Id.* at 6-7.)

Second, Defendant AP&G argues that Plaintiff has not stated a claim pursuant to Section 349, because he has failed to allege that he ever viewed any relevant deceptive statement or purchased the relevant product prior to being injured.  (*Id.* at 7-9, 10.)

Third, Defendant AP&G argues that Plaintiff has failed to state a negligence claim, because his reliance on the "rescue doctrine" is flawed in that such doctrine applies only to conduct taken to save another person (not an animal) and requires a preexisting duty that he has not plausibly alleged here.  (*Id.* at 9-10.)

Fourth, Defendant AP&G argues that Plaintiff has failed to state a claim for public nuisance, because he has not alleged any harm that is distinct from that which could be experienced by the community at large.  (*Id.* at 10.)

Fifth, Defendant AP&G argues that Plaintiff has failed to state any breach of warranty or merchantability claims, because not only does Plaintiff ignore the requirement for pre-suit notice, but he has not alleged that he was exposed to any express warranty and has not alleged that the relevant trap was not fit for its ordinary purpose.  (*Id.* at 10-11.)

Sixth, Defendant AP&G argues that Plaintiff has failed to state a claim for strict liability, because he has failed to allege facts plausibly suggesting any design defect, manufacturing defect

or inadequate warning and has admitted that his injury occurred when he was attempting to interfere with the intended functioning of the trap.  (*Id.* at 12.)

Seventh, Defendant AP&G argues that the Court lacks subject-matter jurisdiction, because (a) the Second Amended Complaint does not assert any claims based on federal law, including the FIFRA or FTC Act, (b) Defendant AP&G has not waived its right to object to the lack of jurisdiction because it has raised it in this motion in response to the Second Amended Complaint, and (c) there is no need for jurisdictional discovery because it is Plaintiff who bears the burden to show that Defendant AP&G is not a New York corporation in order to establish jurisdiction for his claims.  (*Id.* at 12-13.)

Eighth, Defendant AP&G argues that Plaintiff's litigation history is relevant here not as to the merits of his claims, but rather to demonstrate that he is familiar with how litigation in federal court proceeds and the requirements he must meet.  (*Id.* at 13.)

## II.     GOVERNING LEGAL STANDARD

"It is a fundamental precept that federal courts are courts of limited jurisdiction."  *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12[b][1]).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings."  *Makarova*, 201 F.3d at 113 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 [2d Cir. 1986]).

16

More specifically, "[w]hen . . . a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) is addressed to the complaint, a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff." *Lunney v. U.S.*, 319 F.3d 550, 554 (2d Cir. 2003) (citing, *inter alia, Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 [2d Cir. 1997]); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (stating that a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12[b][1] only after "[c]onstruing all ambiguities and drawing all inferences" in a plaintiff's favor) (citing *Makarova*, 201 F.3d at 113).

However, when a defendant challenges the factual basis for the plaintiff's assertion of jurisdiction, "[j]urisdiction must be shown affirmatively, and that showing is not made [merely] by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998); *accord, APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003); *see also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001) ("In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both. . . . If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations . . . , the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff . . . . But where evidence relevant to the jurisdictional question is before the court, the district court . . . may refer to that evidence.") (internal quotation marks and citations omitted).

In such a case, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (citing

17

*Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]); *see also Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) ("Plaintiffs bear the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists.") (internal quotation marks omitted).

## III.    ANALYSIS

After carefully considering whether the Court has subject-matter jurisdiction over this action, the Court answers that question in the negative for the applicable reasons stated by the Defendants in their memoranda of law.  *See, supra*, Parts I.B.3, 5, 6, and 7 of this Decision and Order.  To those reasons, the Court adds the following analysis.

"'Subject matter jurisdiction is an unwaivable *sine qua non* for the exercise of federal judicial power.'"  *Windward Bora LLC v. Browne*, 110 F.4th 120, 125 (2d Cir. 2024) (quoting *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 83 [2d Cir. 1990]).  "Two requirements must be met for diversity jurisdiction: (1) the amount in controversy in the case must exceed $75,000 and (2) the case must be between 'citizens of different States' or 'citizens of a State and citizens or subjects of a foreign state,' such that there is complete diversity of citizenship between every plaintiff and every defendant."  *Windward Bora LLC*, 110 F.4th at 125-26 (quoting 28 U.S.C. § 1332[a][1] & [2]).  Where the relevant party is a corporation, "both the state of incorporation and the principal place of business should be considered in deciding whether diversity jurisdiction is present."  *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 141 (2d Cir. 1991); *see also* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]").

Although the parties have raised a plethora of different arguments regarding standing and the merits of Plaintiff's various claims, the Court finds that Plaintiff's Second Amended Complaint stumbles at the foundational hurdle of establishing the existence of subject-matter jurisdiction through complete diversity of the parties.  Plaintiff explicitly bases jurisdiction in this case on 28 U.S.C. § 1332, which, as discussed, requires complete diversity between the parties and an amount in controversy exceeding $75,000.  Plaintiff does allege that complete diversity exists, most relevantly alleging that he is a "resident" of New York[4] and that Defendant AP&G "is a New Jersey corporation with its principal place of business at 75 E. 2nd Street, Bayonne, NJ 07002."  (Dkt. No. 10, at ¶¶ 7-8.)  Defendant AP&G, however, contests this allegation, asserting instead that it "is a New York corporation and has been registered as such since 1984."  (Dkt. No. 44, Attach. 1, at 10-11.)  In making this assertion, Defendant AP&G relies upon a declaration of its CEO, Steve Frisch, in which he attests the company is incorporated under the laws of the State of New York.  (Dkt. No. 44, Attach. 2.)  The Court also takes judicial notice, under Fed. R. Evid. 201, of information on the State of New York Department of State's Division of Corporations Entity Information website, which shows that Defendant AP&G is a New York Domestic Business Corporation.  *Maller v. Rite Aid Corp.*, 14-CV-0270, 2016 WL 1275628, at *3 (N.D.N.Y. March 31, 2016) (Suddaby, C.J.) (collecting cases).[5]

---

[4]     No reason has been provided to doubt that New York is Plaintiff's domicile for diversity purposes.

[5]     https://apps.dos.ny.gov/publicInquiry/EntityDisplay (last visited Jan. 27, 2026).

Notwithstanding Defendant AP&G's provision of information to establish its place of incorporation, Plaintiff argues that Defendant AP&G "has not carried its burden of showing complete diversity of citizenship." (Dkt. No. 48, Attach. 1, at 2.) Apart from attempting to inappropriately shift the burden of proving diversity from himself to Defendant AP&G (given that it is undeniably Plaintiff's burden to establish the existence of subject-matter jurisdiction),[6] Plaintiff also appears to misunderstand the standard for complete diversity by insisting that a lack of clarity regarding Defendant AP&G's principal place of business is fatal to its effort to suggest that diversity does not exist here. It is well established that a corporation defendant can be a citizen of two different states based on being incorporated in one state and having a principal place of business in another state and still defeat complete diversity if one of those measures of citizenship lies within the same state as any of the plaintiffs' citizenship. *See Sty-Lite Co. v. Eminent Sportswear Inc.*, 115 F. Supp. 2d 394, 398 (S.D.N.Y. 2000) (noting that Section 1332(c) "establishes a theory of dual citizenship for corporations and if either the corporation's place of incorporation or principal place of business destroys diversity, then the courts will not have diversity jurisdiction."); *Madden v. Unique Vacations, Inc.*, 20-CV-5499, 2021 WL 11683633, at *2 (E.D.N.Y. Feb. 22, 2021) (noting that, where the plaintiff was assumed to be a citizen of New York, "each Defendant would have to be incorporated *and* have its principal place of business elsewhere for diversity to exist") (emphasis added). In other words, the fact that Defendant AP&G is incorporated in New York is sufficient to show that it is a citizen of New York for the

---

[6]        *See Aurecchione v. Schoolman Transp. Sys. Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.").

purposes of defeating diversity jurisdiction regardless of whether it might also be a citizen of another state based on the location of its principal place of business.

Moreover, because Plaintiff has offered no reason to believe that, contrary to the information provided by Defendant AP&G with its motion, it is not actually incorporated in the State of New York, there is no basis for conducting jurisdictional discovery.  Given that the Court was able to find documentation of Defendant AP&G's incorporation status on a publicly available government website, there is also no basis for an assertion that the information needed to assess jurisdiction was not readily discoverable to Plaintiff at the time he filed this action such that court-ordered discovery would be necessary.

Lastly, Plaintiff attempts to salvage this action by asserting in his response memorandum of law that the Second Amended Complaint also raises "substantial issues under federal law" that alternatively provide jurisdiction pursuant to 28 U.S.C. § 1331.  (Dkt. No. 48, at 8-9.)  Specifically, he alleges that "Defendants' glue traps may violate" both FIFRA and the FTC Act, which are federal statutes.  (*Id.*)  However, Plaintiff has not asserted claims pursuant to either of these statutes in the Second Amended Complaint and indeed never mentions any violation of federal law, asserting only various state law claims.  (*See generally* Dkt. No. 10.)  Even if the Court were to construe this *pro se* pleading as asserting the strongest claims possible consistent with its factual allegations (out of special solicitude to Plaintiff as a *pro se* litigant), claims under FIFRA and the FTC Act would be unavailable to Plaintiff.   As Defendants correctly argue in their memoranda, neither of those statutes provide a private right of action, and thus neither of those claims would cure the lack of subject-matter jurisdiction. *See No Spray Coalition, Inc. v. City of New York*, 351 F.3d 602, 605 (2d Cir. 2003) (noting that "FIFRA does not provide for

citizen enforcement suits," and "[s]uch enforcement actions may be brought only by specified agencies of federal and state governments"); *McIver v. Ginger Ale*, 24-CV-9102, 2025 WL 1736658, at *1 (S.D.N.Y. June 20, 2025) ("Plaintiff also cannot state a claim under the Federal Trade Commission Act . . . which prohibits false advertising in products as well, because the FTC Act does not provide individuals with a private right of action to bring a claim under the statute.") (citing *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 [2d Cir. 1974]).

For the above reasons, the Court finds that (1) it lacks subject-matter jurisdiction over any of the claims asserted in the Second Amended Complaint, and (2) efforts to amend that Second Amended Complaint would be futile, because of (a) the information showing that Defendant AP&G is a citizen of New York,[7] and (b) the fact that the federal statutes Plaintiff would purportedly rely upon to assert federal-question jurisdiction do not provide a private right of action.

Finally, the Court notes that, although Defendant Bell requests that this Court issue a pre-filing injunction against Plaintiff "in this or any other federal court" based on his litigation history (Dkt. No. 43, Attach. 2, at 25-27), the Court is empowered to do so only with regard to actions filed in this Court (as a *pro se* litigant). Here, the Court declines to do so, because

---

[7]    The Court notes that it would also be futile to permit Plaintiff to amend his Second Amended Complaint to remove Defendant AP&G from this action (thus eliminating the lack of complete diversity) because, apart from that fact that such an amendment would not cure the lack of jurisdiction that existed at the time this action was filed, Plaintiff himself acknowledges that the device that caused his physical injury was specifically a Catchmaster glue trap (and that, based on the information presented here, only Defendant AP&G manufactures and markets that specific trap), and thus only Defendant AP&G could be said to have been the source of his injury for purposes of standing. Simply stated, because permitting such an amendment would necessarily result in the dismissal of Plaintiff's claims due to a lack of Article III standing, the Court need not allow that amendment.

Plaintiff has filed only two such actions in this Court. Plaintiff is respectfully cautioned,
however, that he is fast becoming an abusive litigant.

      **ACCORDINGLY**, it is

      **ORDERED** that Defendants' motions to dismiss (Dkt. Nos. 41, 43, 44) are **<u>GRANTED
in part</u>** to the extent that they are based on a lack of subject-matter jurisdiction and **otherwise
<u>DENIED</u> as moot** to the extent they are based on other grounds; and it is further

      **ORDERED** that Plaintiff's motions (Dkt. Nos. 17, 26, 36, 40) are **<u>DENIED</u> as moot** due
to a lack of subject-matter jurisdiction; and it is further

      **ORDERED** that Plaintiff's Second Amended Complaint is **<u>DISMISSED</u> without
prejudice** to refiling in state court within the applicable limitations period.

Dated:  February 27, 2026
      Syracuse, New York


Glenn T. Suddaby
U.S. District Judge